COLUMBUS BLANK BOOK CO., APPELLEE, *v.* MALOON, DIR., ET AL., APPELLANTS.   (Two cases.)

(Nos. 7240 and 7242—Decided January 18, 1963.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. John C. Elam*, for appellee.

*Mr. Mark McElroy* and *Mr. William B. Saxbe*, attorneys general, and *Mr. Theodore R. Saker*, for appellants John E. Hull, State Purchasing Agent, and James H. Maloon, Director of Department of Finance.

*Messrs. Power, Griffith, Jones & Bell*, for appellant The F. J. Heer Printing Company.

*Per Curiam.* This is an appeal on questions of law and fact from a judgment of the Common Pleas Court prohibiting the appellants Maloon and Hull from proceeding in the award of a public contract to appellant The F. J. Heer Printing Company, and ordering them to award the contract to appellee.

By leave of court, amended and additional pleadings have been filed and the case has been submitted upon the full proceedings before the Common Pleas Court and additional evidence presented in this court.

On July 2, 1962, the Department of Finance gave public notice in the newspapers, and on September 21, 1962, issued invitations to bid on contracts for First Class and Second Class state printing as defined by Section 125.47, Revised Code. Bid proposals were received from appellant The F. J. Heer Printing Company and from appellee. On October 22 the bids were opened and the appellee was the low bidder. Various investigations and discussions occurred, but no acceptance was issued. On November 30 an application was presented to the State Controlling Board for permission to award the contracts without competitive bidding. Permission was granted, and on the same day a notice of award was sent to The F. J. Heer Printing Company.

The first question is the legal effect of the board's action. The minutes state:

"November 30, 1962

"At 2:15 p. m. on Friday, November 30, 1962 the Sundry Claims Board meeting was interrupted to consider Controlling Board Request No. 776—from the Ohio Senate over the signature of Thomas Bateman, Clerk of the Senate for permission to purchase, without competitive bidding contract for printing First and Second Class printing as described in R. C. 125.47.

"Request was presented by Mr. Maloon and Mr. Stanley.
"Vote on the request was as follows:

"Chairman, Mr. Stanley — Yes
"Rep. Fisher — Yes
"Senator Deddens — No
"General Goble — Yes
"Mr. Furnier — Yes

"Request was approved to purchase without competitive bidding."

No statement is made that an emergency existed, nor are any facts or reasons stated from which it could be implied. On all the evidence before us, it is our conclusion that no emergency was shown, and the board's action was invalid.

The next point is to consider the nature and legal effect of the notice sent to the Heer printing company on November 30 by Hull, the superintendent of purchases, pursuant to instructions from the Director of Finance. This notice states:

"In accordance with *the decision of the State Controlling Board of this day,* your proposal dated October 22, 1962, in response to [bid invitation] * * * has been accepted at the prices quoted therein." (Emphasis added.)

It is our conclusion that this notice was not intended and did not operate as an acceptance of the Heer bid proposal which had been made in response to the invitation to bid pursuant to the competitive bidding procedures. Rather it was a *by-passing* of those procedures, and an attempt to award new contracts without competitive bidding under the authority of the Controlling Board action. Since we have concluded that the board's action in this case is invalid, it follows that the award based on that action is equally invalid.

What then is the status of the bid proposals of the two companies, which were submitted under the invitation of September 21? In compliance with the public notice requirement of Section 125.48, Revised Code, the department caused publication to be made on July 2 in proper newspapers. These notices established the time for receipt of bids as August 20. Under Section 125.14, Revised Code, invitations to bid must be sent at least fifteen days preceding that date (or about August 4). No such invitations were sent. Later, invitations were sent on September 21. These changed and extended the time for receipt to

October 22. However, no public notice was given of this extension of time. Further, under Section 125.51, Revised Code, bids are required to be opened within two days after the date set for receipt. There are thus several obvious discrepancies. The court has doubt as to the validity of these proceedings. However, none of the parties has questioned them.

We have stated that the notice of November 30 to Heer did not constitute an acceptance under the invitations to bid. Assuming the invitations and bid proposals to have been validly made, their status is now simply that of bids received and opened but without as yet any acceptance of either bid.

Appellee's demand is that the director be ordered to award the contracts to it. To be entitled to an order requiring a public official to do a specific act, it must be shown there is a clear legal duty to so act. In our opinion, appellee has failed to show such a duty.

It was incumbent upon appellee to show that it was "the lowest responsible bidder having proper facilities." The evidence shows that appellee relies primarily upon the ATF photo composition process of printing. This process does not meet statutory specifications for First Class printing (bills and resolutions) required under Section 101.51 of the Revised Code, and related sections.

With respect to both First Class and Second Class printing, the evidence shows that appellee's use of the ATF process has been very limited. On the evidence, appellee did not have such equipment at the time the bids were received. Much of the equipment it now has was acquired since December 1, 1962. While other enterprises are apparently using the process successfully, appellee's experience on large commercial type contract work is negligible. Appellee does appear to have a good staff. Various officials have at various times expressed their opinions as to appellee's capability to perform. However, it is not clear that those opinions took into account the statutory specifications as we hold them to be. There were also statements at various times of an intent to award the contracts to appellee. There is no evidence of an entry on the department journal pursuant to Section 121.21, Revised Code, nor of any other finding or determination that was ever formalized in any way. Statements of intent and probable conduct as of any par-

ticular time do not necessarily establish what will actually happen when action is taken.

On the evidence, and considering the legal meaning of "responsibile bidder having proper facilities," we cannot say that there is a clear obligation to award these contracts to appellee. The question for this court is whether there is now a clear legal *obligation* to award the contracts to appellee, and *not* whether appellee can or should be awarded the contracts.

Further, as stated above, no bid proposal submitted under the invitations to bid has yet been accepted, and no notice of award has yet been made. Judicial notice is taken of the change in state personnel. Further investigation may still be made by the officials concerned, and all bids might yet be rejected as too high. This court cannot order the acceptance of a bid which has not yet been rejected.

Two observations should be made. It is for the Legislature and not a court to determine whether the specifications in Section 101.51, Revised Code, are in the best interests of the General Assembly and the public, or whether they are unnecessarily restrictive. Secondly, the court is aware that it has placed heavy pressure on all concerned, including itself, in order to expedite this litigation. The needs of the General Assembly create a situation which justifies extraordinary burdens. We ask that if any party intends to file for reconsideration, any such application be made promptly so that a final entry can be filed as soon as possible.

There being no clear legal right to the relief demanded, the prayer for an order requiring the awarding of the contracts is denied.

*Judgment accordingly.*

DUFFY, P. J., BRYANT and DUFFEY, JJ., concur.

BRYANT, J., concurring. I wish to add these comments:
(1) There appear to have been some violations of the law as to competitive bidding in that, (a) bidding was not in fact closed on August 20, 1962, the date set for closing in the legal advertisement; (b) bids were not awarded in two days after the final date for filing bids; (c) invitations were not mailed out

fifteen days prior to August 20, 1962 (actually on September 21, 1962).

(2) There appears to have been no reliance on the journal of the department. It has been the law of this state for many years that all state departments shall keep such a journal and such journal, like the journal of a court, is controlling.

(3) There appears never to have been any certificate of the Director of Finance that the funds needed for this contract were appropriated, were unexpended and unencumbered, and, therefore, available for expenditure. I am totally unimpressed with the argument that this step is merely routine.